SIGNED THIS: June 09, 2006

_____
**MARY P. GORMAN**
**UNITED STATES BANKRUPTCY JUDGE**

_____

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| In Re | ) | |
| | ) | In Bankruptcy |
| DEMIRCO HOLDINGS, INC., | ) | |
| | ) | Case No. 06-70122 |
| Alleged Debtor. | ) | |

## O P I N I O N

This matter comes before the Court upon an involuntary petition filed February 17, 2006, under Chapter 7 of the Bankruptcy Code by Charter One Bank, N.A. ("Petitioning Creditor") against the alleged debtor, DemirCo Holdings, Inc. ("Holdings"). Holdings has filed an Answer and Motion to Dismiss the involuntary petition.

### Factual Background

Petitioning Creditor and Holdings have stipulated to most of the relevant facts. Holdings is a member of a group of affiliated

-1-

companies that borrowed money from Petitioning Creditor.  In addition to Holdings, the affiliated companies include DemirCo Group (North America), LLC ("Group"), DemirCo Industries, LLC ("Industries"), and Western Precision ("WPI").  Prior to the liquidation of the various companies, Group held a 100% ownership of Industries and a 95% ownership interest in Holdings, while Holdings held a 100% ownership of WPI.  Petitioning Creditor has also filed involuntary petitions in this Court against Industries and Group.  Industries has consented to the entry of an order for relief in the case filed against it. Group has filed an Answer and Motion to Dismiss the petition filed against it.  WPI filed a voluntary petition under Chapter 7 in the United States Bankruptcy Court for the Northern District of California.

    Holdings has stipulated that it is jointly and severally liable with Industries, Group, and WPI for all amounts borrowed from and owed to Petitioning Creditor.  Holdings and Petitioning Creditor agree that the principal amount due as of July 15, 2005, was $20,213,645.95.  Petitioning Creditor asserts that the total amount remaining due to it as of February 17, 2006, was not less than $12,879,684.29.  Although Holdings declined to stipulate to that amount, Holdings did stipulate that, even if all partial defenses which it may have as to the amount due were decided in its favor, the remaining amount owed by it to Petitioning Creditor would be millions of dollars.  Holdings further stipulated that, as

of February 17, 2006, it owed Petitioning Creditor at least $12,300, which was not subject to a dispute and which was non-contingent.

Holdings and the affiliated companies entered into an initial forbearance agreement with Petitioning Creditor on April 19, 2005, and a second forbearance agreement on July 18, 2005.  Pursuant to those agreements, the assets of Holdings and the affiliated companies which secured their liabilities to Petitioning Creditor have been liquidated.  Holdings has not conducted any operating business nor has it had any employees at any time relevant to these proceedings.

## Legal Analysis

The involuntary petition in this case was filed pursuant to Section 303 of the Bankruptcy Code, which provides in pertinent part:

> (a)  An involuntary case may be commenced only under chapter 7 or 11 of this title, and only against a person, except a farmer, family farmer, or a corporation that is not a moneyed, business, or commercial corporation, that may be a debtor under the chapter which such case is commenced.
>
> (b)  An involuntary case against a person is commenced by the filing with the bankruptcy court of a petition under chapter 7 or 11 of this title --
>
>> (1) by three or more entities, each of which is either a holder of a claim against such person that is not contingent as to liability or the subject of a bona fide dispute as to liability or amount, or an indenture trustee representing such a holder, if such noncontingent, undisputed claims

> aggregate at least $12,300 more than the value of any lien on property of the debtor securing such claims held by the holders of such claims;
>
> (2) if there are fewer than 12 such holders, excluding any employee or insider of such person and any transferee of a transfer that is voidable under section 544, 545, 547, 548, 549, or 724(a) of this title, by one or more of such holders that hold in the aggregate at least $12,300 of such claims;
>
> * * * *
>
> (h) If the petition is not timely controverted, the court shall order relief against the debtor in an involuntary case under the chapter under which the petition was filed. Otherwise, after trial, the court shall order relief against the debtor in an involuntary case under the chapter under which the petition was filed, only if --
>
> > (1) the debtor is generally not paying such debtor's debts as such debts become due unless such debts are the subject of a bona fide dispute as to liability or amount; or
> >
> > (2) within 120 days before the date of the filing of the petition, a custodian, other than a trustee, receiver, or agent appointed or authorized to take charge of less than substantially all of the property of the debtor for the purpose of enforcing a lien against such property, was appointed or took possession.

11 U.S.C. § 303.

In its Answer and Motion to Dismiss, Holdings raises two issues. First, Holdings argues that, because portions of the amounts due to Petitioning Creditor are subject to a bona fide dispute, Petitioning Creditor does not meet the statutory requirements for an entity to be eligible to file an involuntary

petition. Second, Holdings asserts that the dispute between it and Petitioning Creditor is a two-party dispute which does not belong in the Bankruptcy Court and, accordingly, the case should be dismissed on bad faith grounds. Holdings does not contest the allegation in the involuntary petition that it is not paying its debts as they become due. Further, Holdings does not assert that it has sufficient additional creditors to trigger the statutory requirement of three petitioners for an involuntary filing. *See* 11 U.S.C. 303(b).

In order to be eligible to file an involuntary petition, an entity must hold a claim against the debtor "that is not contingent as to liability or the subject of a bona fide dispute as to liability or amount" and "such noncontingent, undisputed claim(s)" must aggregate at least $12,300. 11 U.S.C. § 303(b)(1). Holdings does not claim that its obligation to Petitioning Creditor is contingent or disputed as to liability. To the contrary, it has stipulated that it is jointly and severally liable for whatever amounts are due to Petitioning Creditor. Holdings' only dispute is as to the amount claimed by Petitioning Creditor, and the dispute is described in its Answer and Motion to Dismiss by the statement that Holdings "has seen no support for Petitioning Creditor's alleged remaining debt, does not know what has been charged to the debt and does not know what proceeds have been applied against the debt, and thus denies the amount of the debt asserted by the

Petitioning Creditor in the involuntary petition."

Thus, Holdings' alleged bona fide dispute appears to be based, at least in part, on its need for a complete accounting of the liquidations of the assets of all of the affiliated companies which have occurred over the last year or so, pursuant to the forbearance agreements.[1] Holdings has, however, stipulated that, even if every potential issue it might raise in defense of the amount of Petitioning Creditor's claim is resolved in Holdings' favor, the amount of Petitioning Creditor's claim will exceed the statutorily required $12,300 and, in fact, will be in the millions of dollars. Holding argues that a bona fide dispute as to any amount of the claim makes Petitioning Creditor ineligible to file this case. Petitioning Creditor argues that, because Holdings concedes the existence of a noncontingent, undisputed claim in an amount in excess of $12,300, any potential dispute as to the balance of the claim is irrelevant for purposes of determining its eligibility to be a petitioner in this case. The Court agrees with the Petitioning Creditor on this issue.

The statute does not, on its face, require a petitioner to

---

[1] Holdings has not provided the Court with the details of its alleged "bona fide dispute" as to the amount of Petitioning Creditor's claim. At oral arguments, the parties asked the Court to decide initially only one question: Assuming that the Petitioning Creditor has a claim which meets the statutory requirements in all respects (including amount), does it matter that the amount of the claim in excess of $12,300 is in dispute? The Court agreed to proceed on that basis.

hold a liquidated claim.  The proof that is required is only that a claim exists which is of the type required and is in at least the amount required.  For a bona fide dispute to be relevant, it must at least have the potential to reduce the total of petitioners' claims to an amount below the statutory threshold.  *See* In re Focus Media, Inc., 378 F.3d 916, 926 (9th Cir. 2004), *cert. denied* 544 U.S. 968, 125 S.Ct 1742 (2005).  Here, the existence of an unsecured, noncontingent, undisputed claim in an amount in excess of $12,300 is admitted.  The statutory requirements have been met.

Holdings argues that the recent changes made in the Bankruptcy Code demand a different result.  The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA") added the phrase "as to liability or amount" to modify the phrase "bona fide dispute". 11 U.S.C. § 303(b)(1), (h)(1).  Holdings argues that this amended language shows legislative intent to make any dispute as to amount a basis to deny entry of an order for relief.  This Court disagrees.

The legislative history from 1984 shows a Congressional intent that the addition of the "bona fide dispute" phrase to the statute originally was intended to cover disputes as to both liability and amount.  *See* 130 Cong. Rec. S7618 (daily ed. June 19, 1984) (remarks of Sen. Baucus).  The addition of the words "as to liability and amount" in the 2005 amendments is compatible with that original intent and no legislative history was found to

suggest otherwise.  Prior to BAPCPA, some courts faced with "bona fide dispute" questions focused principally on liability issues. *See, e.g.* In re Seko Investments, Inc., 156 F.3d 1005, 1008 (9th Cir. 1998), *cert. denied* 526 U.S. 1066, 119 S.Ct. 1458 (1999). Thus, the amendment appears to clarify the prior legislative intent.  With the dearth of committee comments and legislative history available to interpret BAPCPA, this Court cannot presume that Congress added the phrase "as to liability and amount" with the intent that the claims of involuntary petitioners must now be fully liquidated either by agreement or judgment so that no dispute exists as to any portion of such claims.  Without clear legislative intent, this Court cannot presume such a change in the law and declines to do so.

Petitioning Creditor has an unsecured, noncontingent, undisputed claim against Holdings in an amount in excess of $12,300.  Petitioning Creditor has met the requirement of statute as to eligibility to file this involuntary case.

Holdings has alleged as its second basis for dismissal of the involuntary petition that this case represents a two-party dispute which does not belong in Bankruptcy Court.  Holdings suggests that the use of the involuntary petition by Petitioning Creditor cannot be sustained absent "special circumstances" which have not been shown.

It is clear that Bankruptcy Code Section 303 contemplates and

allows the filing of an involuntary petition by only one creditor. 11 U.S.C. § 303(b)(2); In re Concrete Pumping Service, Inc., 943 F.2d 627, 630 (6th Cir. 1991). Courts have, however, scrutinized one-creditor filings closely to make sure that an involuntary petition is not filed unfairly or abusively by a creditor to put an operating company into bankruptcy in order to gain leverage in resolving legitimate disputes. *See*, e.g., In re E.S. Professional Services, Inc., 335 B.R. 221 (Bankr. S.D. Fla. 2005); Federal Financial Co. v. DeKaron Corp., 261 B.R. 61 (S.D. Fla. 2001).

Holdings is no longer doing any business and its known assets have been liquidated pursuant to the forbearance agreements. Petitioning Creditor has suggested that causes of action remain which should be investigated by a Chapter 7 trustee. Holdings counters that it is unaware of any causes of action that Petitioning Creditor could not pursue outside of Bankruptcy Court. Holdings also suggests that Petitioning Creditor wants a trustee to pursue the causes of action because the defendants in such causes of action - presumably insiders - might have defenses against Petitioning Creditor if Petitioning Creditor were the plaintiff, whereas those defenses could not be raised if a trustee were the plaintiff.

All of the comments by both parties about the potential causes of action and defenses thereto have been very cryptic, and the Court has no idea whether there are any causes of action for a

-9-

trustee to pursue.  Based on what has been presented by both parties so far, however, this Court cannot find that the involuntary petition was filed in bad faith or for any improper purpose.  The parties have cooperated in an orderly liquidation of Holdings and this final step of having a bankruptcy trustee review whatever causes of action Petitioning Creditor thinks exist does not seem unreasonable.

Accordingly, Holdings' Motion to Dismiss will be denied at this time.  The denial is without prejudice to Holdings, the case trustee, the United States Trustee, or any other party in interest to bring a subsequent Motion to Dismiss under Section 707(a) or any other applicable provision of the Bankruptcy Code.  The Court's only decision here is that the allegations regarding a two-party dispute are insufficient to form a basis to deny the entry of the order for relief requested in the involuntary petition.

This Opinion is to serve as Findings of Fact and Conclusions of Law pursuant to Rule 7052 of the Rules of Bankruptcy Procedure.

See written Order.

###